IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Kevin Michael Hoff, | ) |
|                Plaintiff, | ) **ORDER FOR**<br>) **SUMMARY JUDGMENT**<br>) |
| vs. | ) Case No. 1:22-cv-151<br>) |
| Joseph Joyce, Warden,<br>North Dakota State Penitentiary, | )<br>)<br>) |
|                Defendant. | ) |

Plaintiff, Kevin Michael Hoff, was allowed to proceed in this Section 1983 action with three claims seeking injunctive relief for deliberate indifference to serious medical needs, interference or tampering with legal mail, and denial of due process during a prison disciplinary hearing.[1] (Doc. No. 7 at 5-8). Defendant, Joseph Joyce, as Warden of the North Dakota State Penitentiary (NDSP), moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 57). For the reasons explained below, summary judgment is granted.

**I.     BACKGROUND**

    **A.     Factual Background**

Hoff is an inmate at NDSP. He suffers from Type 1 diabetes and requires insulin to manage his blood sugars. (Doc. No. 8 at 5). He alleges that "[o]nce I take my insulin to eat, I need to eat within a half hour. If I do not it causes low blood sugar, which has caused seizures and a number of painful issues." Id.  Hoff contends his food has been withheld or delayed "at least 50 times" at NDSP, resulting in seizures and pain. Id. Hoff reports NDSP staff informed him to purchase items

---

[1] Hoff's claims for monetary damages against the State of North Dakota were dismissed as barred by the Eleventh Amendment. (Doc. No. 7).

1

from the commissary to control his low blood sugar issues. Id. at 6. He claims that if he eats commissary items, he is unable to eat the regular meals because his blood sugars would be too high. Id. (see also Doc. No. 59 at 3-4). High blood sugars allegedly cause Hoff to experience pain, vomit blood, and have blood in his stool. See id.

Hoff also asserts NDSP staff have interfered with his legal mail. Id. at 5. He explains that while attempting to start a civil suit, his documents were swapped between envelopes. Id. (see also Doc. No. 59 at 1). He claims a money transfer voucher was taken out of its envelope and swapped with a summons and complaint that was in another envelope. Hoff alleges his filing was rejected "for no check and no paperwork[.]" Id. Hoff further claims documents that he attempted to send by certified mail were misplaced and when the mail was returned to him "half was missing and in its place was other legal mail" he had tried to send separately. Id. Hoff also claims he was denied a "federal 1983 civil suit packet." (Doc. No. 59 at 1).

Finally, Hoff complains he was not allowed to present witnesses or evidence at a prison disciplinary hearing. (Doc. No. 8 at 6). He contends his repeated requests to present evidence and witnesses were denied. (Doc. No. 59 at 1). Hoff claims testimony was falsified and asserts "this was done to hide repeated torture of causing low blood sugar by withholding of food." (Doc. No. 8 at 6).

B. **Procedural History**

Joyce moved for summary judgment on August 28, 2023. (Doc. No. 57). In opposition, Hoff argued discovery was necessary for him to respond to and rebut the assertions made in support of summary judgment. (Doc. No. 59). The Court convened a status conference on March 5, 2024, to address the discovery issue. (Doc. Nos. 77, 79). The Court discussed with the parties the areas for discovery and allowed Hoff an opportunity to conduct discovery to respond to the motion for

summary judgment. A second status conference was held on May 10, 2024, to discuss the status of discovery. (Doc. Nos. 86-89). Hoff elected not to participate in that hearing.

On August 8, 2024, the Court entered an order denying various motions made by Hoff, including a motion for preliminary injunction. The Court's order provided Hoff a deadline of September 9, 2024, to submit any additional pleadings or exhibits in opposition to Joyce's motion for summary judgment. (Doc. No. 91 at 1, 8). Hoff did not supplement the record to oppose Joyce's summary judgment motion.

II.     **SUMMARY JUDGMENT STANDARD**

Under Rule 56, summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, indicates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Whitworth v. Kling, 90 F.4th 1215, 1217 (8th Cir. 2024). The movant is entitled to summary judgment "when the plaintiff has failed to make a sufficient showing of the existence of an essential element of [their] case." Id. (citations and internal quotations omitted). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The court's function is to determine whether there is a genuine dispute about a material fact and decide whether the evidence is so disputed that a jury must decide the case or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must "demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.

2011) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). The non-moving party "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [their] favor." Turner v. Mull, 784 F.3d 485, 489 (8th Cir. 2015) (citation and internal quotations omitted); see also Fed. R. Civ. P. 56(c)(1). The court views the record most favorably to the nonmoving party and draws all reasonable inferences in their favor. Bordeaux v. Bicknase, 76 F.4th 780, 784 (8th Cir. 2023). A reasonable inference is one that can be drawn from the evidence without resort to speculation. Turner v. XTO Energy, Inc., 989 F.3d 625, 627 (8th Cir. 2021).

This same standard applies to unrepresented litigants. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001) ("Like any other civil litigant, [pro se plaintiff] was required to respond to defendants' motion with specific factual support for his claims to avoid summary judgment."). Though an unrepresented plaintiff is entitled to a liberal construction of their pleadings, they must comply with substantive and procedural law, including the requirements of Rule 56. Quam v. Minnehaha Cnty. Jail, 821 F.2d 522 (8th Cir. 1987) (per curiam); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam); see also Mathis v. Mathes, 170 F. App'x 985 (8th Cir. 2006 (per curiam) (holding pro-se litigant's bare assertions, without the support of exhibits, affidavits or sworn statements, do not establish a genuine issue of material fact).

### III. DISCUSSION

The Court allowed Hoff to proceed with three claims insofar as he sought injunctive relief, but not monetary damages. The Court first discusses the nature of injunctive relief and the requirements to obtain such relief in a prison setting and then addresses Hoff's claims.

#### A. Injunctive Relief

An injunction is an extraordinary remedy that "must be tailored to remedy specific harms shown." Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982). Such relief is "available where a

plaintiff alleges an *ongoing* violation of *federal* law, and where the relief sought is *prospective* rather than *retrospective*." Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 898 (8th Cir. 2000) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 294 (1997) (O'Connor, J., concurring) (emphasis in original)). Historical facts, however, will often be necessary to prove the claim even though the relief is prospective. Id. If no constitutional violation has occurred, the use of an injunction is improper under § 1983. Falls v. Nesbitt, 966 F.2d 375, 380 (8th Cir. 1992); see also Rogers, 676 F.2d at 1214 ("in the absence of a clear showing of [a constitutional] deprivation, there is no predicate . . . for the relief[.]")

The Eighth Circuit Court of Appeals has long recognized that district courts should not interfere with prison administration using injunctions "unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." Rogers, 676 F.2d at 1214. In other words, "for an injunction to issue a right must be violated and . . . the court must determine whether a cognizable danger of [a] future violation exists and that danger must be more than a mere possibility." Goff v. Harper, 60 F.3d 518, 520–21 (8th Cir. 1995) (internal quotations omitted). As the plaintiff, Hoff has the burden to show that injunctive relief is necessary and warranted. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

    **B.**    **Deliberate Indifference to Diabetes Management**

Hoff's suit raises complaints about how his Type 1 diabetes is managed within NDSP. A claim for deliberate indifference to a serious medical need requires a prisoner to demonstrate that he suffers from an objectively serious medical need and that prison officials actually knew of the need but deliberately disregarded it. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). The standard involves an objective prong and subjective prong. Id. Here, there is no question that

diabetes constitutes a serious medical need, satisfying the objective prong. Shipp v. Murphy, 9 F.4th 694, 703 (8th Cir. 2021) (finding diabetes is a serious medical need).

Whether prison officials deliberately disregarded the management of Hoff's diabetes is another matter. Hoff "must show more than negligence, more even than gross negligence and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly, 205 F.3d at 1096. Deliberate indifference involves a culpability equal to the criminal law definition of recklessness. McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009). In other words, it "requires proof of a reckless disregard of [a] known risk." Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001). An inmate's non-compliance with treatment recommendations cuts against a finding of deliberate indifference. Malone v. Does, No. 3:22-CV-00204, 2022 WL 17722411, at *3 (E.D. Ark. Nov. 3, 2022), report and recommendation adopted, 2022 WL 17721028 (E.D. Ark. Dec. 15, 2022) (citing Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997)).

Because Hoff has not supplemented the record with any additional material facts, the Court reiterates the facts from the Order denying the motion for preliminary injunction.

> Hoff explains that as a Type 1 diabetic, he is dependent on insulin to survive. (Doc. No. 28 at 2). He takes both a long-acting insulin and a short-acting insulin, each of which perform different functions. Id. at 2-3. Hoff describes the calculations he does to determine how much insulin he will need, which depends on his blood sugar level and what he plans to eat for the day. Id. at 3-4. Hoff states he takes an average of 16 units of insulin before each meal, and asserts he needs to eat within a short period of time after taking insulin or his blood sugars drop dangerously low. Id. at 4-5. Hoff asserts he has "lost track of the number of times [his] food has been delayed or refused over a half hour up to an hour and a half." Id. at 6. Some staff members have reportedly told Hoff it is not their problem and instructed him to purchase food from the commissary to manage the issue. Id. at 6-7. According to Hoff, if he eats food from the commissary, he must forego eating the prison meals or his blood sugars will become too high. Id. at 6. Hoff reports he informed Dr. Gravning of the problems with delayed meals, and she allegedly recommended he not take insulin or wait to take the insulin. Id. at 7. According to Hoff, he must take his insulin per NDSP policy or face disciplinary action. Id.

On the other side, Dr. Gravning, the staff physician at NDSP who has been working with Hoff since his admission in 2019, indicates Hoff's management of his insulin at times verges on misuse. (Doc. No. 37-4 at 1, 3; Doc. No. 57-8, ¶ 3; Doc. No. 58). Dr. Gravning confirms Hoff takes both a long-acting and rapid-acting insulin. (Doc. 37-4 at 2). The long-acting insulin is a fixed dose that Hoff receives. In contrast, Hoff's rapid-acting dose is on a "discretionary range." Id. at 3. This means he is permitted to inject zero to sixteen units of insulin at his discretion so long as his blood sugar is within certain limits. Id. at 3. Despite the range of options available to him, Dr. Gravning reports that Hoff always elects to inject 16 units of insulin regardless of his blood sugar readings. Id. (see also Doc. No. 37-5). Dr. Gravning explains this is problematic. She states Hoff's usage of the rapid-acting insulin was discussed with him during his annual physical in October 2022, but she reports Hoff was resistant to change. Id. at 4. She further reports that Hoff refused to have his A1C tested in connection with the 2022 physical. Id. According, to Dr. Gravning, having an updated A1C would inform the medical team whether Hoff's discretionary use of the rapid-acting insulin is causing him harm. Id.

Dr. Gravning also disagrees with Hoff's interpretation of how the rapid-acting insulin is metabolized in the body. She specifically disputes the effects of injecting 16 units of insulin in the morning, as explained by Hoff in his motion for preliminary injunction. Id. at 4-5. Among other disagreements, Dr. Gravning explains that if Hoff uses 16 units of the rapid-acting insulin, as is his custom, the insulin peaks at one hour after injection and continues working for two to four additional hours. Id. at 5. Hoff's highest risk of becoming hypoglycemic, according to Dr. Gravning, occurs at hour one if he has not eaten since the injection. Id. Hoff, however, has not had any recent issues with hypoglycemia (low blood sugar). The last record NDSP has of Hoff experiencing hypoglycemia was on May 19, 2020. Id.

In a supplemental affidavit, Dr. Gravning reports she continues to treat Hoff for diabetes, whose "decision-making regarding his insulin has grown more concerning." (Doc. No. 57-8, ¶ 3). Dr. Gravning explains that "[i]n the last month, [Hoff] has disobeyed staff orders regarding insulin, refused glucose tablets, received write-ups for injecting too much insulin, and acted with hostility towards staff when they impose limits on his insulin use." A medical note dated July 9, 2023, reports that Hoff appeared at the medline to check his blood sugar. (Doc. 58 at 1). After his first test, Hoff was directed to retest and his second test blood sugar reading was 40, which the Court understands to be low. Id. Hoff was instructed not to take any insulin and was offered glucose tablets instead, but he refused the tablets and injected himself with more than 8 units of insulin, disregarding the medical staff's recommendation. A similar incident occurred on July 10, 2023, when he injected himself with 10 units of insulin despite the nurse's recommendation that he use only 5 units because his blood sugar reading was 65. Id. at 2. Another incident occurred later that same month. On July 18, 2023, Hoff's blood sugar was 68 when he tested at noon, and per medical instructions, the provider was to be contacted if Hoff's level was under 70. Id. at 3. The physician's assistant who was

>contacted instructed that Hoff should not be given insulin because of his low blood sugar. Id. Hoff became very upset that he was denied insulin that day. Id.

(Doc. No. 91at 4-6).

Hoff has not raised any material issues of fact that prison officials have been deliberately indifferent to the management of his diabetes. At most, Hoff has merely shown that he disagrees with the treatment decisions made by Dr. Gravning and other personnel at NDSP. But it is well established that such disagreements do not rise to the level of a constitutional violation. Jolly, 205 F.3d at 1096. Hoff has not raised any material facts that Dr. Gravning or others have acted with "deliberate indifference," which equates to the criminal law definition of recklessness. McRaven, 577 F.3d at 982. Moreover, the evidence in the record tends to show that Hoff has been non-compliant with treatment recommendations, and this cuts against a finding of deliberate indifference. See Logan, 119 F.3d at 650 (concluding doctors' efforts, which the prisoner was unable or refused to follow, were not deliberately indifferent); Malone, 2022 WL 17722411, at *3 (E.D. Ark. Nov. 3, 2022), report and recommendation adopted, 2022 WL 17721028 (E.D. Ark. Dec. 15, 2022). Summary judgment against Hoff is therefore appropriate on the claim of deliberate indifference to serious medical needs.

### C. Interference with Legal Mail

Hoff was allowed to proceed with a claim of interference with his outgoing mail as a potential violation of his right to access the courts and the right to free speech. (Doc. No. 7 at 7). This claim involves the swapping of envelopes and their contents, which may have impacted his ability to file a complaint or apply for post-conviction relief, and the alleged denial of a PLRA § 1983 packet. Id.

Prisoners have a constitutional right of access to the courts that is applicable to the states through the due process clause of the Fourteenth Amendment. See Bounds v. Smith, 430 U.S. 817,

828 (1977); White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). "To prove a violation of the right to meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury[.]" Kautzky, 494 F.3d at 679. To prove an actual injury requires Hoff to "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Hartsfield v. Nichols, 511 F.3d 826, 831-32 (8th Cir. 2008) (quoting Lewis v. Casey, 518 U.S. 343, 353 (1996)). In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court instructed that identifying a "nonfrivolous," "arguable" underlying claim that was frustrated or lost is an element of a lack of access to court claim. Id. at 425.

The First Amendment right to free flow of incoming and outgoing mail is in addition to the right of access to the courts. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Courts have "consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Id. An isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, a claim for violating the free flow of legal mail requires allegations of an ongoing practice of interference by prison officials. Id. at 352; see also Laughlin v. Stuart, No. 2022 WL 12165755, at *1 (8th Cir. Oct. 21, 2022) (concluding isolated incidents of mail tampering are insufficient to establish a free speech violation). Generally, sporadic and short-term delays in receiving mail are insufficient to proceed with a First Amendment claim. See Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (dismissing claim where plaintiff did not allege a continuing pattern or repeated occurrences of untimely delivered mail).

Viewing the evidence in the light most favorable to Hoff, he shows neither an actual injury from the mail tampering or an ongoing practice of interference with mail. The Court can take

9

judicial notice that Hoff commenced two other § 1983 actions in this Court.[2] Hoff has not demonstrated that any of his legal claims were denied, rejected, or prejudiced because of the alleged mailing problems at NDSP.

In addition, evidence of an ongoing practice of interference with mail is also missing. Hoff's complaint alleges at most three prior instances of his legal mail being swapped between envelopes. One instance involved a summons and complaint being switched with a money transfer voucher and the other involved certified mail. Hoff does not contend, nor has he produced evidence of a continuing problem, which would warrant injunctive relief. Summary judgment against Hoff is therefore warranted on the interference with mail claim.

### D. Disciplinary Hearing Process

Hoff was also allowed to proceed on a due process claim. Hoff complains he was not allowed to call witnesses or present evidence at his May 13, 2022 disciplinary hearing. The issue for his disciplinary hearing was whether Hoff had assaulted his case manager after the case manager refused to print documents for Hoff from his computer. (See Doc. Nos. 57-3, 57-4). Joyce presented evidence that Hoff was advised of his right to call witnesses. One of those documents is a statement of rights and notice outlining inmate hearing rights dated and signed by Hoff on May 4, 2022.[3] (Doc. No. 57-5 at 4-5). The third right states: "Do you understand that you have the right to call witnesses and present documentary evidence in your behalf—providing it does not interfere with the safe operations of this institution?" Id. at 5. Hoff signed the acknowledgement, and it was countersigned by staff member, Marc Schwehr. Id. Joyce also submitted an offender notification

---

[2] Hoff v. Joyce, No. 1:23-cv-135 (D.N.D. July 25, 2023); Hoff v. Kabbenhoft, No. 1:23-cv-167 (D.N.D. Sept. 8, 2023).

[3] The disciplinary hearing was held on May 13, 2022. (Doc. No. 57-2, ¶ 14).

of charges form dated May 4, 2022, documenting Hoff's rights, which he acknowledged by initialing in the space provided, including his right to call witnesses and present documentary evidence. Id. at 6.

Hoff has not produced any evidence to counter the defense's submissions despite the additional time to conduct discovery and supplement the record. Moreover, Hoff conceded in his filings that he punched his case manager. (Doc. No. 28 at 8 ("I resorted to punching the case manager in an attempt to get any res[ ]ult"); Doc. No. 59 at 4 ("to try to stop the physical harm I punched the case manager")). Since the disciplinary issue was whether Hoff assaulted the case manager, the Court cannot conclude a material issue of fact exists that his procedural due process rights were violated. Hoff has not come forward with evidence that would tend to show he was denied the opportunity to call witnesses and present evidence at the disciplinary hearing. Nor has Hoff identified the witnesses he would have called. The documents in the record show only that Hoff, his case manager, and the officer who broke up the assault were involved until the response team arrived. (Doc. Nos. 57-3, 57-4). In sum, Hoff has failed to raise a material issue of fact that he was denied due process during his disciplinary hearing.

Furthermore, as Joyce correctly argues, Hoff does not argue any current violation of his due process rights, only a past violation. (Doc. No. 57-1 at 13). Only claims for injunctive relief were allowed to proceed in this suit. Because there is no ongoing violation of due process, summary judgment against Hoff is appropriate.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. No. 57) is **GRANTED**. Hoff's Complaint is **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 25th day of November, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court
